Filed 9/5/18; Certified for publication 10/2/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NICOLAS SCHULZ, a Minor, etc., et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> JEPPESEN SANDERSON, INC., et al., <br><br>     Defendants; <br><br> HERZOG, YUHAS, EHRLICH & ARDELL, APC, <br><br>     Appellant. | B277493 <br><br> (Los Angeles County Super. Ct. No. BC 537157) |

    APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed.

    Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog, Thomas F. Yuhas, and Evan D. Marshall for Appellant Herzog, Yuhas, Ehrlich & Ardell, APC.

    Nelson & Franekel and Gretchen M. Nelson for Amicus Curiae Consumer Attorneys of California on behalf of Appellant Herzog, Yuhas, Ehrlich & Ardell, APC.

Kiesel Law and Paul R. Kiesel for Amici Curiae Kiesel Law and Paul R. Kiesel on behalf of Appellant Herzog, Yuhas, Ehrlich & Ardell, APC.

Buchalter, Harry W.R. Chamberlain II; Glickman & Glickman and Steven C. Glickman for Plaintiffs and Respondents Nicolas Schulz, Tristan Schulz, Florian Schulz, and Lukas Schulz, Minors, by Silke Schulz, their guardian ad litem.

————————

This case arises out of a wrongful death lawsuit, in which appellant Herzog, Yuhas, Ehrlich & Ardell, APC (Herzog) represented plaintiffs and respondents Silke Schulz and her four young children.[1]  Silke's husband Rainer died when the plane he was piloting crashed just before landing at an airport in Germany.  Herzog obtained a settlement of $18,125,000 from the manufacturers of the aircraft and from the providers of some of the aircraft's systems, maps, and charts, all of whose negligence allegedly contributed to the crash.  After a trial to determine the allocation of the settlement funds among Silke, her four young children with Rainer, Rainer's two adult daughters from a previous marriage, and Asia Today, the trial court allocated virtually all the settlement proceeds to the minor children.  The court awarded Herzog 10 percent of the children's funds as attorney fees, rather than the 40 percent called for in the contingency fee agreement or the 31 percent requested by Herzog.  Herzog contends that the trial

---

[1]  Herzog also represented Rainer Schulz's company, Asia Today, which claimed indemnity based on its settlement with the estate of Rainer's co-pilot, who also died in the crash. The primary plaintiff in the case, Steven Spector, was appointed to act as administrator of Rainer's estate.  Spector is not a party to this appeal.  Throughout this opinion, we refer to Rainer and Silke Schulz by their first names in order to distinguish them. No disrespect is intended.

court abused its discretion by reducing its fee to 10 percent. We agree and reverse.

## FACTS AND PROCEEDINGS BELOW

At the time of his death, Rainer was the president and co-owner with Silke of Asia Today. Silke had previously worked alongside Rainer at Asia Today, but she left the business in 2010 when her first son Lukas was born. In 2011, the family expanded to add triplets. The triplets were born prematurely, and two suffered serious, permanent disabilities. At the time of his death, Rainer was primarily responsible for the financial support of Silke and the four children. Rainer also had two adult daughters from a prior marriage, both of whom had been receiving financial support from him at the time of his death.

On March 1, 2012, Rainer was piloting a small Cessna jet aircraft owned by Asia Today with a co-pilot and three other passengers onboard on their way to Egelsbach airport near Frankfurt, Germany. As the plane began its final approach, it struck a grove of trees on a hilltop approximately two miles from the runway, crashing and killing everyone on board.

Before hiring Herzog, Silke consulted with aviation experts to determine the cause of the crash. Two experts consulted the preliminary report from the BFU, the German government agency responsible for investigating air accidents, and concluded that pilot error was the primary cause of the crash.[2] The experts concluded that Rainer disregarded standardized operating procedures and failed to fly a stabilized approach, with the result that the plane

---

[2] The BFU report itself did not reach a conclusion regarding the cause of the crash. The record includes one expert report, but it does not specify whether the report came from Silke's experts or from those hired by the estate of the aircraft's co-pilot, whose representatives sued Asia Today and ultimately settled their claims in a separate case.

3

flew too fast too close to the airport, and when difficulty arose, he and his co-pilot did not have the situational awareness or time to recover. Attorneys for the estate of Rainer's co-pilot also attributed insufficient visibility as another potential cause of the crash. The Egelsbach airport lacks the technology to allow pilots to land relying solely on instruments, meaning that they must maintain visual contact with the runway in order to land. At the time of the accident, cloud cover may have been as low as 400 to 800 feet.

Herzog agreed to represent Silke, her sons, and Asia Today on a contingency basis. Herzog hypothesized that the Cessna's enhanced ground proximity warning system was not functioning properly, and that as a result, a "[p]ull-up" warning sounded only two seconds before impact. Herzog believed that if the warning system had been functioning properly, it would have begun sounding alarms 14 seconds before impact, which would have allowed enough time for Rainer to avoid crashing. Herzog also suspected that the aviation charts on which Rainer relied, which did not fully describe the hills nor chart the crash site elevation, may have contributed to the crash.

Silke, together with Klaus Hoffman, the chief executive officer of Asia Today, negotiated the terms of Herzog's representation, with the participation of Asia Today's corporate attorneys. According to Herzog, Silke and Hoffman considered several attorneys to represent them in the case; they had the resources to pay for legal representation on an hourly basis, but chose a contingency arrangement because of, among other reasons, the risk that the plaintiffs might not be able to recover enough to warrant the expense of hourly fees. According to Herzog, the other attorneys Silke spoke with would not take the case on a contingency basis. In addition to the causation risk, Silke was aware that the defendants might attempt to remove the case to Germany. Rainer and Silke were German nationals, the chart manufacturer was a German entity, and the accident had occurred in Germany. According to

4

Herzog, removal to Germany would likely reduce the potential value of the case to the plaintiffs, as damages awards in Germany are typically smaller than in United States courts. Respondents do not challenge this assertion.

The fee agreement that Herzog negotiated with Hoffman and Silke called for Herzog to receive 31 percent of any settlement funds if the case settled at least 30 days before trial, and 40 percent if it settled later. In discovery, plaintiffs learned that the chart manufacturer had surveyed the area where the crash took place a few months before the accident, but had not revised its charts until after the crash. Herzog also discovered that the manufacturer of the plane's guidance software had released a software update shortly after the sale of the aircraft, but the update was never installed on Asia Today's plane. The Cessna service bulletin listed the software update as "[o]ptional" rather than "[r]ecommended or "[m]andatory," and did not describe the safety enhancements in the update. Herzog's experts claimed that, if the update had been installed, the guidance system would have issued visual and audio warnings 16 seconds before the crash, allowing Rainer time to abort the landing. Flight records indicated that the guidance system did not issue any such warnings until two seconds before the crash.

After approximately 18 months of litigation, and a few days before trial was scheduled to begin, the parties agreed to settle the case for an unallocated $18,125,000.

In the case of any wrongful death award, including one obtained through settlement, the trial court must apportion the award among the claimants. (Code of Civ. Proc., § 377.61; *Corder v. Corder* (2007) 41 Cal.4th 644, 653-654.) In any case in which settlement proceeds are paid to a minor, the court must approve the attorney fees paid out of the minor's share. (See Prob. Code, §§ 3600-3601.)

Herzog proposed that the court allocate 65 percent of the proceeds, or $11,781,250, to Silke and Asia Today,[3] and divide the remaining 35 percent, or $6,343,750, equally among the four children. Herzog requested 31 percent of the amount allocated to the children as attorney fees, and informed the court that it would collect attorney fees from Silke of approximately 30 percent of the amount allocated to her. Herzog proposed that Rainer's two adult children from a prior marriage receive no money. Silke had previously purchased their interests in Rainer's estate, and she incorrectly believed this included their right to recover from the wrongful death lawsuit.

The daughters did not know about the wrongful death suit until the case was well underway. They did not contest the settlement, but did disagree with their exclusion from the allocation of the proceeds. Silke reached a settlement with the daughters for their claims, which the court accepted.

The court ultimately rejected Herzog's proposed allocation and, in April 2016, issued a statement of decision apportioning all of the settlement proceeds to the four children, less one dollar, which the court allocated to Silke. The court rejected Herzog's claim for 31 percent of the children's share of the settlement and instead awarded Herzog 10 percent. The court acknowledged that Herzog had done "a good job in investigating [the] case" and realized "a substantial sum." On the other hand, the court noted that "the case did not have to be tried" and faulted Herzog for failing to notify the adult daughters of the case earlier. The court concluded that this "was either negligent or a highly questionable tactical decision, which caused much unnecessary litigation and delays."

---

[3] The proposed settlement does not specify the percentage to be paid to Asia Today, as opposed to Silke.

After the trial court issued its statement of decision, Herzog withdrew from representation of Silke and her children due to the conflict of interest regarding the fee. Herzog moved for a new trial on the issue of attorney fees, alleging that the court had not made adequate findings to support the reduction in its attorney's fees. Silke and the children opposed the motion, arguing that Herzog had forfeited this argument by failing to object to the statement of decision. The trial court denied the motion.

## DISCUSSION

Herzog contends that the trial court abused its discretion when it awarded attorney fees of only 10 percent of the total value of the settlement and asks that we order the trial court to award it 31 percent of the children's portion, rather than remanding the case to the trial court to reconsider its ruling. We agree that the trial court abused its discretion but we decline to determine in the first instance what fee would be appropriate under California Rules of Court, rule 7.955. Rather, that is a matter in the first instance for the trial court to exercise its discretion.

### I.    Background on Approving a Settlement Involving Minors

In any case in which a trial court approves a settlement involving the payment of funds to a minor, the court must make an order for the payment of reasonable attorney fees. (See Prob. Code, §§ 3600-3601.) Rule 7.955 of the California Rules of Court establishes the procedure the court must follow and factors it may consider in determining whether an attorney's proposed fee is reasonable. We review the trial court's decision regarding attorney fees for abuse of discretion. (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 832-833.) This is a deferential standard of review, but "reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong

7

test to determine if the statutory requirements were satisfied." (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634.)

California Rules of Court, rule 7.955(a) provides that, in the absence of a fee agreement previously approved by the court, "the court must use a reasonable fee standard when approving and allowing the amount of attorney's fees payable from money or property paid or to be paid for the benefit of a minor." (Cal. Rules of Court, rule 7.955(a)(1).) In determining whether a proposed fee is reasonable, "[t]he court must give consideration to the terms of any representation agreement made between the attorney and the representative of the minor . . . and must evaluate the agreement based on the facts and circumstances existing at the time the agreement was made." (Cal. Rules of Court, rule 7.955(a)(2).)

Rule 7.955(b) of the California Rules of Court also provides a "nonexclusive" list of factors the court may consider in determining a reasonable attorney's fee. The first of these factors is "[t]he fact that a minor . . . is involved and the circumstances of that minor." (Cal. Rules of Court, rule 7.955(b)(1).) The remaining factors pertain mostly to the nature of the legal work involved. Thus, a court may consider "[t]he amount of the fee in proportion to the value of the services performed" (Cal. Rules of Court, rule 7.955(b)(2)), "[t]he novelty and difficulty of the questions involved and the skill required to perform the legal services properly" (Cal. Rules of Court, rule 7.955(b)(3)), and "[t]he amount involved and the results obtained" (Cal. Rules of Court, rule 7.955(b)(4)). Other factors pertain to other aspects of the representation, including "[t]he time limitations or constraints imposed by the representative of the minor . . . or by the circumstances" (Cal. Rules of Court, rule 7.955(b)(5)); "[t]he nature and length of the professional relationship between the attorney and the representative of the minor" (Cal. Rules of Court, rule 7.955(b)(6)); "[t]he experience, reputation, and ability of the

8

attorney or attorneys performing the legal services" (Cal. Rules of Court, rule 7.955(b)(7)); and "[t]he time and labor required" (Cal. Rules of Court, rule 7.955(b)(8)). In addition, the court may consider factors relating to the minor's representative, including "[t]he informed consent of the representative of the minor" (Cal. Rules of Court, rule 7.955(b)(9)); "[t]he relative sophistication of the attorney and the representative of the minor" (Cal. Rules of Court, rule 7.955(b)(10)); and "[t]he likelihood, if apparent to the representative of the minor . . . when the representation agreement was made, that the attorney's acceptance of the particular employment would preclude other employment" (Cal. Rules of Court, rule 7.955(b)(11)). The court may also consider "[w]hether the fee is fixed, hourly, or contingent" (Cal. Rules of Court, rule 7.955(b)(12)) and, if contingent, the court may consider "(A) [t]he risk of loss borne by the attorney; [¶] (B) [t]he amount of costs advanced by the attorney; and [¶] (C) [t]he delay in payment of fees and reimbursement of costs paid by the attorney" (Cal. Rules of Court, rule 7.955(b)(13)(A)-(C)). Finally, the court may consider "[s]tatutory requirements for representation agreements applicable to particular cases or claims." (Cal. Rules of Court, rule 7.955(b)(14).)

## II.    Application to this Case

California Rules of Court, rule 7.955 does not dictate a presumptively reasonable percentage or mathematical method of determining the appropriate attorney fees under a contingency agreement. Indeed, in adopting the rule, the Judicial Council explicitly preempted local rules regarding attorney fees for minors, many of which had established a baseline recovery of 25 percent.[4]

---

[4] Even if there is no benchmark starting point for attorney fees in cases under California Rules of Court, rule 7.955, a court may of course reasonably determine that 25 percent is an appropriate percentage in a given case.

9

The parties do not provide any argument to suggest that any particular percentage is appropriate for all cases. We acknowledge that what is reasonable in applying the factors in California Rules of Court, rule 7.955 in any particular case may comprise a range of percentages. Under the facts of this case, however, 10 percent was not within that reasonable range. Although the trial court would be acting within its discretion to award less than 31 percent, we note that 31 percent is not out of line with awards in class actions, which, like this case, involve attorney fees to be paid by a protected class and that require court approval.

Thus, our Supreme Court has upheld a decision to approve a class action settlement providing that plaintiff receive one-third of a $19 million settlement. (See *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 485-486.) The Ninth Circuit deems 25 percent of the total recovery pool its standard starting point for attorney fees in class-action settlements. (See *In re Bluetooth Headset Products Liability)* (9th Cir. 2011) 654 F.3d 935, 942.) Some California courts have also found this guideline reasonable in class actions. (See, e.g., *Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 557, fn. 13; *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 24, fn. 1.)

Here the trial court's full statement on the matter is as follows: "Turning to the issue of attorney's fees, the Court is not bound by a contingency agreement when considering the best interests of the minors. Attorney fees must be carefully scrutinized and adjusted if warranted. Here, the attorneys hired by Silke did a good job in investigating this case. And, with the tremendous assistance of a settlement judge, a substantial sum was realized. On the other hand, the case did not have to be tried. Moreover, the attorneys' failure to notify [the adult daughters] of their claims until the eve of trial—some 18 months after the case was filed— was either negligent or a highly questionable tactical decision, which caused much unnecessary litigation and delays. The Court

concludes that a 10% award of contingency fees is fair and proper." The court went on to suggest that Silke was free to pay Herzog "whatever sum she feels is reasonable. But paying these attorneys their requested $5 million in fees out of the settlement proceeds would be excessive, to the substantial detriment of Rainer's sons and contrary to this Court's duty [to] assure that no injustice is done to them."

We conclude the trial court gave too little consideration to California Rules of Court, rule 7.955(a)(2), which required it to take into account the terms of Herzog's representation agreement with Silke from the perspective of when the agreement was signed. In addition, the court did not acknowledge the factors listed in California Rules of Court, rule 7.955(b). Although these factors are not mandatory, they provide a guide to the considerations relevant to determining whether a fee protects the interests of a minor while allowing an attorney to obtain a fair recovery. Instead of balancing the relevant factors, the court gave overwhelming weight to a single concern, the expense of the children's extensive medical needs.

California Rules of Court, rule 7.955 requires a trial court, in determining reasonable attorney fees, to balance an attorney's interest in fair compensation with the protection of the interests of a minor client. Thus, a trial court "*must* give consideration to the terms of any representation agreement made between the attorney and the representative of the minor or person with a disability and *must* evaluate the agreement based on the facts and circumstances existing at the time the agreement was made." (Cal. Rules of Court, rule 7.955(a)(2), italics added.) Among the considerations is the length of the attorney's delay in receiving payment and risk of obtaining nothing at all. (See Cal. Rules of Court, rule 7.955(b)(13)). In addition, the rule states that "the value of the [attorney's] services" (Cal. Rules of Court, rule 7.955(b)(2)), "the skill required to perform the legal services properly" (Cal. Rules of Court, rule 7.955(b)(3)), the attorney's

11

"experience, reputation, and ability" (Cal. Rules of Court, rule 7.955(b)(7)), and "[t]he time and labor required" (Cal. Rules of Court, rule 7.955(b)(8)) are all relevant factors.

All of these factors support a recovery greater than 10 percent. One of the two attorneys who primarily worked on the case, Ian Herzog, had 47 years of experience in aviation accident cases, and the other, Thomas Yuhas, had 37 years of experience. Both attorneys also have many years of experience as pilots, which undoubtedly gave them insight as to the causes of the crash. In this case, both sides agree that the risk of loss was substantial. When viewed from the perspective of the time it was signed, the representation agreement thus realistically evaluated the high risk that there could be no recovery at all or one substantially lower than was achieved.

Herzog increased its risk by advancing more than $300,000 in costs in the case. Silke and Asia Today reimbursed some of those expenses many months later, but Herzog incurred at least $83,829.53 in expenses for which the firm was not entitled to reimbursement if it did not win a recovery. And very importantly, all parties agree that Herzog obtained a very good recovery for its clients considering the circumstances of the case.

California Rules of Court, rule 7.955 also contains protections to ensure that attorneys do not take advantage of their minor clients. A court considering attorney fees may take into consideration "[t]he informed consent of the representative of the minor" (Cal. Rules of Court, rule 7.955(b)(9)) and "[t]he relative sophistication of the attorney and the representative of the minor or person with a disability" (Cal. Rules of Court, rule 7.955(b)(10)). The record demonstrates that Silke, who after Rainer's death took a major role in the management of Asia Today, was sophisticated. She also was assisted by corporate counsel and the chief executive officer of Asia Today in negotiations with Herzog. She had options other than using a contingent fee lawyer because she had sufficient

resources to hire attorneys by the hour. According to Herzog, the clients elected to hire an attorney on a contingency basis because of the significant risk involved in the case, and because they wanted an attorney who had "skin in the game."

As important and relevant to the factors in California Rules of Court, rule 7.955, no other attorneys Silke had contacted would take the case on a contingency basis. Moreover, the fee percentages were within the range commonly accepted at the time for adult plaintiffs.

As justification for reducing Herzog's fee, the trial court cited the needs of Silke's children, in particular those suffering from severe disabilities. Thus, the court noted that according to one expert, the children would likely incur medical expenses totaling $76 million over the course of their lives, and that the total value of the settlement would not be sufficient to cover all these expenses. The court concluded that it "must assiduously protect these minors to the extent possible given the amount of settlement proceeds to be allocated."

We accept that a child's needs are a relevant and important factor in determining a reasonable attorney fee—California Rules of Court, rule 7.955(b)(1) states that the court may consider "[t]he fact that a minor . . . is involved and the circumstances of that minor." This single factor, however, cannot overwhelm all other considerations. Indeed, an overly strong emphasis on the client's medical needs when determining attorney fees could have the perverse effect of reducing access to the courts to the neediest. If attorneys know that courts are likely to drastically reduce their contingency fee awards irrespective of the other considerations in California Rules of Court, rule 7.955, it will be difficult or impossible for those most in need to find qualified attorneys to handle their cases.

The court's only criticism of Herzog's representation was that the firm failed to notify Rainer's adult daughters about the

13

existence of the lawsuit until a relatively late stage, which may have contributed to the animosity between the daughters and Silke and led to more drawn out litigation regarding the settlement distribution. But even accepting that as a valid criticism, it did not justify so low an award when so many other considerations suggested a significantly higher fee award.

The arbitrariness of the trial court's award of only 10 percent for attorney fees was compounded by the court's allocation of the settlement dollars. More specifically, the apportionment of the proceeds between Silke and the children directly affected Herzog's recovery because the court has authority to reduce attorney fees only with respect to those portions of an award payable to a minor. In this case, if the trial court had apportioned even one-fifth of the settlement funds to Silke—an amount that would not seem unreasonable—it would have meant about $750,000 in additional fees to Herzog under the retainer agreement with Silke.

Finally, Herzog contends that, rather than remand the case to the trial court for further proceedings, we should decide for ourselves whether Herzog's requested fee was reasonable. We decline to do so. We recognize that " ' "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his court' " ' " (*Thayer v. Wells Fargo Bank, supra,* 92 Cal.App.4th at p. 832) and it is not our role, even upon reversal, to decide in the first instance what that fee should be.

### III.   Forfeiture

Silke, as guardian ad litem, contends that Herzog forfeited its objection to the distribution of settlement proceeds by failing to file an objection to the statement of decision. In support of this position, Silke cites *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 (*Arceneaux*), in which our Supreme Court stated that after the trial court issues a statement of decision, a "party must state any objection to the statement in order to avoid an implied finding

14

on appeal in favor of the prevailing party." (*Id*. at p. 1133.) According to Silke, because Herzog failed to object to the trial court's failure to take into account relevant factors regarding attorney fees, the firm may not now raise those contentions on appeal. We are not persuaded.

The Court's decision in *Arceneaux* was based on its interpretation of Code of Civil Procedure sections 632 and 634. As the Court explained, "When the court announces its tentative decision, a party may, under section 632, request the court to issue a statement of decision explaining the basis of its determination, and shall specify the issues on which the party is requesting the statement; following such a request, the party may make proposals relating to the contents of the statement. Thereafter, under section 634, the party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party." (*Arceneaux, supra*, 51 Cal.3d at p. 1133, fn. omitted.) Under the terms of the statute, however, an implied finding applies only "[w]hen a statement of decision does not resolve a controverted issue, or if the statement is ambiguous." (Code Civ. Proc., § 634; accord, *Arceneaux, supra*, 51 Cal.3d at p. 1136 ["if the statement fails to resolve a controverted issue or is ambiguous[,] the defects must be brought to the court's attention to avoid presumptions in favor of the judgment"].)

In this case, the trial court did resolve the issue of attorney fees and stated its reasoning clearly. Herzog's objections are not about the court's factual findings, but rather about the court's exercise of its discretion in reducing Herzog's award. The only inference to be drawn from the court's failure to discuss the factors of California Rules of Court, rule 7.955 in its statement of decision is that the court found those factors unimportant in this case. Neither *Arcenaux* nor Code of Civil Procedure section 634 requires a party to file an objection to a statement of decision reiterating every rejected argument in order to preserve those arguments on appeal.

15

## DISPOSITION

The judgment of the trial court is reversed.  Appellant is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

JOHNSON, J.

BENDIX, J.

16

Filed 10/2/18

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| NICOLAS SCHULZ, a Minor, etc., et al., | B277493 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC 537157) |
| v. | |
| JEPPESEN SANDERSON, INC., et al., | |
| Defendants; | |
| HERZOG, YUHAS, EHRLICH & ARDELL, APC, | |
| Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on September 5, 2018, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ROTHSCHILD, P. J.        JOHNSON, J.        BENDIX, J.