Filed 1/29/21  Conservatorship and Estate of Bessard CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Conservatorship of the Person and Estate of ENEZ A. BESSARD.<br><br>JOSCELYN JONES,<br>        Petitioner and Appellant,<br>v.<br>GWENDOLYN A. SACCO,<br>        Objector and Respondent. | A156773<br><br>(San Francisco County Super. Ct. No. PCN15298493) |

Attorney Joscelyn Jones Torru (Jones) was appointed by the probate court to represent Enez Bessard, a 92-year-old woman who was the subject of an intra-family dispute over who should be her conservator.  When Jones subsequently petitioned the probate court for attorney fees under Probate Code section 1472, the amount and reasonableness of her fee request became the subject of dispute.  Jones requested attorney fees in the amount of $73,400; one of Bessard's daughters filed an objection; and the probate court, after rounds of briefing and a hearing, awarded Jones $46,500, plus reimbursement of approximately $2,000 in costs.  On appeal, Jones challenges the attorney fees part of the order as an abuse of discretion and

1

asks us to award her all of the attorney fees she requested. Because Jones has given us no basis to find error, we affirm.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

In April 2015, pursuant to authority that permits it to appoint counsel (§ 1470), the probate court appointed Jones to represent Enez Bessard, described in the order of appointment as a "Proposed Conservatee." At the time of Jones's appointment and shortly thereafter, multiple competing pending petitions for conservatorship over Bessard had been filed by members of her family (daughters, some of whom were half-sisters, and a granddaughter). The petitions made accusations of wrongdoing by other petitioners.

On August 27, 2015, Jones filed a petition recommending appointment of a private professional fiduciary conservator, Paula Bibbs. The petition described Bessard as diagnosed with dementia and other health problems, needing assistance with medications and activities of daily living, as well as "subject to fraud and undue influence" and requiring management, maintenance, and protection of her estate. The petition noted that due to conflict between Bessard's adult children, "competing petitions" for appointment of conservator had been filed.

On October 21, 2015, Jones filed a petition to have Bibbs named as temporary conservator in advance of the upcoming hearing on appointment of conservator, "due to worsening conflict and dissention [sic] among competing family members"; five competing petitions for conservator had been filed. The petition recommended that the court accept the resignation of Gwendolyn Sacco, one of Enez Bessard's daughters, who had been acting as

---

[1] All statutory references are to the Probate Code. All references to rules are to the California Rules of Court.

2

temporary conservator.  The petition stated that "the actions of the temporary conservator have been detrimental to the conservatee's mental, emotional and physical wellbeing," and reported "continual complaints and reports of verbal abuse in and around proposed conservatee and current temporary conservator either initiates or fails to redirect these explosive episodes."

On October 27, 2015, the probate court granted the petition and entered an order appointing Bibbs as temporary conservator of the person and estate of Bessard and accepting Sacco's resignation as temporary conservator.

On November 19, 2015, Bibbs was appointed conservator of Bessard's person and estate.

In June 2016 (and as amended in August), Sacco filed a first and final account of temporary conservator, which included a request for approval of her fees as temporary conservator and fees for her counsel.  Jones filed objections, including to the payment of attorney fees to Sacco's attorneys other than during the period between February 18 and October 27, 2015, "whereby time was rendered for services that were not of benefit" to the conservatee's person or estate "and/or [Sacco] was not serving in the capacity of conservator."  After briefing and hearing, the probate court (Judge Paul Alvarado) awarded fees to Sacco's attorneys in the amount requested ($53,764.17) without reduction (Sacco Fee Order).  The attorney hourly rates for time actually billed ranged from $350 to $375.

In June 2018, Jones filed a petition for her own attorney fees as appointed counsel to Bessard.  In a narrative format, she summarized the nature and extent of her work for Bessard, totaling 183.5 hours.  She sought compensation at her "regular rate" of $400 per hour (noting that this was the

3

hourly billing rate of one of Sacco's attorneys, Bruce Feder). Jones also attached detailed time records. In all, she requested $73,400 in attorney fees, plus expenses in the amount of $2,099.41.

Jones characterized her legal representation for the conservatee as "complicated by unresolved family differences" among Bessard's eight living children from two marriages, who were "unable or unwilling to [work] together . . . due to years of distrust and historical conflict with one another."

Jones noted that the conservatee's estate was valued at $20,859.34, and that, in addition, Bessard owned a house in San Francisco with an estimated market value of more than $1 million, currently held in trust outside the conservatorship estate.

Jones's petition for attorney fees drew a sharp objection from Sacco, filed August 22, 2018. Sacco identified herself as the conservatee's daughter, the former temporary conservator of the person and estate of Bessard, and current trustee of the Trust of Enez Anita Bessard. Sacco's grounds for objection were detailed and many. She contended Jones had not acted in the best interests of the conservatee and accrued legal fees and costs that were unnecessary or wasteful. She objected that there was no agreement covering the terms of Jones's representation and Jones should not be paid more than $325 per hour. She objected to charging for certain work, such as travel time. She contended that the hourly time recorded for certain legal services was unreasonable: meetings with the conservatee were twice the length they should have been given that conservatee could "at best" be in a conversation with Jones for 5 to 10 minutes before "becoming distracted or agitated"; fruitless time (16.5 hours and $6,600 in fees) was spent objecting to Sacco's own first and final account of temporary conservator which was ultimately accepted without reduction by the probate court, suggesting that Jones's

4

work was "neither necessary nor beneficial" to conservatee; and Jones took part in many meetings and communications with "multiple participants . . . and third parties" that were not necessary or in the best interests of the conservatee (29 such meetings were identified from Jones's time records and disputed). Sacco's objection was also supported by a declaration from her husband, George Sacco, disputing a time entry that pertained to him, and describing a confrontational conversation between himself and Jones.[2] In all, Sacco challenged approximately $30,000 of the attorney fees and costs requested by Jones, and proposed an additional reduction of approximately $13,700 based on an hourly rate of $325 rather than $400.

Sacco also noted the small size of the conservatorship estate, and that the conservatee's monthly income was approximately $1,200.

Jones filed a detailed declaration in response to Sacco's objection on October 2, 2018. She described the case as "complex and challenging," quoting language used by Sacco's former attorney Rowena Navia in support of her request for fees and costs in 2016, and noting that Sacco's attorney fees request covered a shorter period of time and was not reduced by the probate court. Jones justified her $400 hourly rate as being reflective of her 36 years' experience, and she denied that the court had set an hourly rate when she was appointed. In justifying her attorney time and expenses, Jones criticized Sacco's conduct and accused her of "continuing myopic self-interests." Jones contended that the bulk of her time (23 pages of Jones's 32-page billing statement) was spent on legal work before Bibbs was appointed conservator, and that Sacco's "actions substantially and during her temporary conservator

---

[2] Sacco's attorney Milla Lvovich also filed a declaration in support of the objection but pertaining only to a dispute regarding a continuance that is not relevant to this appeal.

appointment solely contributed to the need for the amount, nature and extent of [Jones's] billed time and incurred costs."

As to the value of the conservatee's estate, Jones responded that the current "value on hand" cited by Sacco was as of a conservator's report filed May 1, 2017, that there would be additional fees and costs incurred by the conservator (Bibbs) and her attorney after that date, and that Sacco's "stated concerns lack understanding of the account period rules and is likewise a disingenuous effort to justify her baseless concerns" and are further "exhibition of [Sacco's] own self-interests." Jones added that "a petition will need to be filed with the court for an order directing the Conservatee's trust assets, including real property, be brought under the purview and control of the court's Conservatorship case" in order to meet the conservatee's "ongoing personal daily care needs" and "to manage her current and future estate obligations."

Jones filed a further declaration on October 17, 2018, refuting Sacco's disputes about whether certain phone calls or meetings actually took place on June 9, July 14, and October 7, 2015. As to George Sacco's declaration, she admitted a "scrivener's error": the call was with "Gwen" Sacco, and a day later.

Sacco responded with a supplemental declaration on October 30, 2018, noting that Jones did not address Sacco's objection to $8,960 in billed travel time or justify her $400 per hour billing rate, and requested the court to set an appropriate rate. Sacco strongly objected to Jones's "unsubstantiated character attacks on me" as unprofessional. She continued to dispute the accuracy of particular time entries, comparing them to her own daily notes. Sacco criticized Jones's rationale that her requested attorney fees are "appropriate simply because it is comparable" to the award of fees to Sacco's

6

former attorney. Sacco contended that was an insufficient basis to show Jones's work benefitted the conservatee and her estate. Sacco described the conservatee's estate as "cash-strapped."

The petition for attorney fees was finally heard on October 31, 2018, by the Honorable John K. Stewart. The hearing was not reported. There are "mini-minutes" from the hearing, presumably taken by the courtroom deputy clerk, reflecting that Jones, Gwendolyn Sacco, and Sacco's attorney Lvovich, among others, addressed the court regarding the petition for attorney fees. The court took the matter under submission.

On December 14, 2018, the court issued a written order, ordering the payment of attorney fees and costs. The order appears to be an interlineated copy of a proposed order lodged with the court by Jones (it bears her name and address above the caption). The court hand wrote, "The Court finds a reasonable fee for the services provided is $46,500." It lined out the amounts that had been typed in the proposed order, and ordered that the conservator must pay Jones the "total sum of $48,555.41, for legal services rendered in the amount of $46,500, and reimbursement for costs incurred in the amount of $2,055.41."[3]

---

[3] Jones states in passing in her appellate briefing that Judge Andrew Cheng heard the argument on her petition for attorney fees (not Judge Stewart), and that Judge Stewart signed the order. Nothing in the record supports this statement; even the "mini-minutes" Jones cites for the October 31, 2018 hearing (and that Jones's appellate counsel suggests we rely on in lieu of a reporter's transcript), show Judge Stewart presided. Judge Cheng appointed Bibbs as temporary conservator.

Jones filed an appeal, arguing that the trial court abused its discretion when it reduced her attorney fees request by $26,900. She does not challenge the costs award.[4]

## DISCUSSION

### I.

Section 1472 provides in part that "If a person is furnished legal counsel under Section 1471: [¶] (1) The court shall, upon conclusion of the matter, fix a reasonable sum for compensation and expenses of counsel and shall make a determination of the person's ability to pay all or a portion of that sum." (§ 1472, subd. (a)(1).)

A fundamental principle of appellate review is that the trial court's judgment or order is presumed to be correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "We presume an attorney fee award is correct unless the appellant demonstrates the trial court abused its discretion." (*Taylor v. County of Los Angeles* (2020) 50 Cal.App.5th 205, 209 (*Taylor*).) A court abuses its discretion if its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern Calif.* (2012) 55 Cal.4th 747, 773.)

As we have noted, there is no reporter's transcript from the fee hearing. Nor is there a settled statement on appeal. Without either, Jones can only speculate as to how the probate court calculated and determined the size of the attorney fee award. This creates a big hurdle. (See *Taylor*, *supra*, 50 Cal.App.5th at p. 211 [appellant seeking attorney fees did not hire a court reporter, which "means he lacks a basis for identifying and attacking the court's specific calculation method, which we presume was correct"]; *Rhule v.*

---

[4] Bessard died on February 13, 2019, about two months after the order at issue was filed.

*WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1229 [failure to provide reporter's transcript precluded challenge to award of attorney fees as part of discovery sanctions]; *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 487 ["[t]o the extent [appellant] challenges the amount of the [attorney fee] award to the Gas Co., without a reporter's transcript, [appellant] cannot demonstrate the trial court's award constituted an abuse of discretion"].)

The burden is on the appellant to establish error, and "where the record is silent the reviewing court will indulge all reasonable inferences in support of the judgment. [Citations.] . . . [O]rdinarily, errors not reflected in the trial record will not, and indeed cannot, sustain a reversal on appeal." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557.)

With these principles in mind, we consider Jones's specific arguments.

## II.

Jones agrees that an award of attorney fees is a matter within the trial court's discretion, and urges that we must reverse it if we are "convinced" that the trial court was "clearly wrong and the court abused its discretion."

Jones acknowledges that there are no rules of court which list the factors a trial court must consider in ordering attorney fees for conservatees under section 1472. So she urges us to consider and adopt standards set forth in other probate rules, such as rule 7.751, which governs compensation to the attorney for a conservator, arguing "there is no reason why the same rule should not apply" here. Or that we should consider the application of rule 7.955, which applies to court approval of attorney fees in connection with settlements, compromises or judgments involving minors or persons with disabilities.

9

We decline these suggestions for many reasons. First, there is no statutory basis for us to impose the requirements of specific rules of court to a situation for which they were not meant to apply. Second, the argument was not raised below. And third, our role is not to apply factors and reweigh evidence, which is precisely what Jones is asking us to do in her brief.[5] That is for the trial court.

Further, there is nothing on the face of the record to suggest that Judge Stewart, a very experienced probate court and trial court judge, did not weigh the evidence and exercise his discretion. The court continued the hearing multiple times to permit the parties to complete their filings, heard argument, and took the matter under submission to consider it. The written order states that the court reviewed the "petition and all evidence presented," and that the court "finds a reasonable fee for the services provided is $46,500." The court did not rubberstamp a proposed order.

The burden is on Jones to show that the probate court abused its discretion. Her arguments are not convincing.

She argues that her requested hourly billing rate ($400) was the same rate as one of Sacco's former attorneys, and that those attorney fees were granted without reduction in the Sacco Fee Order. But on this record, Jones

---

[5] To that end, Jones refers us to rule 7.702, entitled "Petition for extraordinary compensation," which sets forth the requirements for a statement of facts when an attorney for a conservator petitions for compensation under rule 7.751. She then purports to "address[ ] the various factors seriatim," arguing the merits of what she did. This is misguided for several reasons. The rule doesn't apply. Even if it did, rule 7.702 sets forth the topics that must be covered in a petition (including nature and difficulty of tasks performed, results achieved, benefit of services to the estate, hourly rates, description of services). There is no dispute that Jones's petition for fees is complete; the issue is whether the court believed the amount of her fee request was warranted.

can only speculate what hourly rate the probate judge thought was appropriate in her case. Further, the submissions that resulted in the Sacco Fee Order show that although one of Sacco's attorneys (Bruce Feder) had an hourly billing rate of $400, Sacco's request for attorney fees did not seek compensation for any work done by Mr. Feder. The small amount of work Mr. Feder performed was not charged to the estate.

In a similar vein, Jones argues that the record "*compels the conclusion the trial court . . .* arbitrarily reduced Jones' attorney's fees request by $26,900" and "in effect" determined she was only entitled to bill 116.25 hours over her three-year representation. (Jones has apparently divided the amount of the fees she was awarded by $400.) But this, too, is just speculation on Jones's part. Without a reporter's transcript, we cannot say whether the trial court thought the hourly rate was too high and/or whether some of the work was excessive or unnecessary. This is the price of the lack of a record.

In fact, there was conflicting evidence in this ample record. Although Jones believed her fee request was reasonable, Sacco presented argument as to why it was not, and argument that was based on evidence to support her view that a reduction in fees and costs of more than $43,000 was warranted. So, too, the trial judge might have believed the fees were excessive in light of the size of the estate. (See § 1472.)

Jones argues that the order is "arbitrary and capricious" and must be reversed because Sacco's former attorneys were awarded "$53,764 in attorney fees for more hours than Jones expended (225.2 hours . . .) for a shorter representation (1.5 years)," in a case involving complex issues and without any reduction. But that order, filed in September 2016 (and by a different probate court judge), is not before us.

Finally, Jones's reliance on *Schulz v. Jeppeson Sanderson, Inc.* (2018) 27 Cal.App.5th 1167, as a basis to find abuse of discretion in this case, is unavailing. *Schulz* involved the apportionment of a wrongful death settlement and an award of attorney fees in a case involving minors. Attorney fees in such cases are governed by a different statute (§ 3600) and rule 7.955. The Court of Appeal in *Schulz* held that the trial court abused its discretion by, among other things, failing to follow rule 7.955, which required it to take into account " 'the terms of any representation agreement made between the attorney and the representative of the minor . . . and . . . evaluate the agreement based on the facts and circumstances existing at the time the agreement was made.' " (*Schulz, supra,* 27 Cal.App.5th at pp. 1176-1177, quoting rule 7.955(a)(2).) The fee award was reversed for the trial court to exercise its discretion in light of the rule in the first instance.

Finally, we note that Jones's disagreements with Sacco and her suspicions as to Sacco's motives and "self interest" in the "maximum pay out" from the eventual sale of Bessard's property figure prominently in her insistence that Sacco's objections to the fee request have no merit and could not have formed the basis for the trial court's reduction in fees. This appears to be an argument that there was insufficient evidence to support the probate court's order. But the absence of a reporter's transcript precludes an appellate argument as to the sufficiency of the evidence. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Moreover, "[a] trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.)

In short, Jones has not shown error.

## DISPOSITION

We affirm the order.

12

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A156773, *Jones v. Sacco*